IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER WASHINGTON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-1527 |
| | : | |
| SERGEANT ERWIN, et al. | : | |

<u>**MEMORANDUM**</u>

**Juan R. Sánchez, J.**                                                                                   August 22, 2016

       Plaintiff Christopher Washington, a former pretrial detainee and prisoner in the Philadelphia Industrial Correctional Center (PICC), brings claims pursuant to 42 U.S.C. § 1983 against five PICC correctional officers—Angela Dixon, Tom Matthew, Philip Thomas, Mackery Teel, and Takisha Miller—and one PICC correctional sergeant—Anika Erwin—for using excessive force against him and/or failing to intervene to prevent the continued use of such force, in violation of his Eighth and Fourteenth Amendment rights. In February 2016, following a period of discovery, Defendants filed a motion for summary judgment, to which Washington has not responded, despite multiple court orders directing him to do so. Indeed, Washington has had no communication with the Court since he was released from custody sometime between April and June 2016. In light of Washington's unresponsiveness, and upon consideration of the factors set forth in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), this case will be dismissed for failure to prosecute. Alternatively, the Court concludes Defendants are entitled to summary judgment on Washington's claims.

**BACKGROUND**

       Washington's claims arise out of a June 14, 2013, altercation that occurred while Correctional Officers Thomas and Matthew were conducting a strip search of Washington and a search of his prison cell as part of a "shakedown" of Washington's housing unit. According to

Washington's counseled First Amended Complaint,[1] several of the Defendants, including Correctional Officers Teel and Miller, attacked him during the inspection without justification, while the remaining Defendants witnessed some or all of the attack but did not intervene to stop it.

Washington was charged with various offenses as a result of the altercation, *see* Defs.' Mot. for Summ. J. Exs. G-I, and at the request of counsel for all parties, the Court placed this case in suspense pending resolution of the charges, *see* Order, Nov. 6, 2014, ECF No. 17. In August 2015, Washington pleaded guilty to aggravated and simple assault charges as to Correctional Officer Matthew, a simple assault charge as to Correctional Officer Dixon, and a charge of recklessly endangering another person as to Sergeant Erwin. *See* Defs.' Mot. for Summ. J. Exs. G-I. The following month, the Court removed the case from suspense and entered a scheduling order, and the case thereafter proceeded to discovery. In January 2016, the Court permitted Washington's pro bono counsel to withdraw from the case after counsel informed Washington of the withdrawal and made clear to him that he was required to comply with all court orders and the Federal Rules of Civil Procedure.

On February 16, 2016, Defendants filed a motion for summary judgment, supported by sworn declarations and other documentary evidence which casts the June 2013 altercation in a dramatically different light than Washington's Amended Complaint. In contrast to Washington's allegation that multiple correctional officers attacked him without justification, Defendants have presented evidence that it was Washington who started the altercation. According to

---

[1] Although Washington filed this case pro se in March 2014, he was represented for a time by pro bono counsel, who accepted an appointment through the Prisoner Pro Se Civil Rights Panel for this District. In January 2016, however, the Court permitted pro bono counsel to withdraw from the case, and Washington has thereafter proceeded pro se.

Defendants' evidence, as part of the shakedown, Correctional Officers Matthew and Thomas took one of Washington's shower shoes (i.e., flip flops) and handed (or attempted to hand) it to Sergeant Erwin for inspection to determine whether the shoe, which felt heavier than its mate, contained contraband.  Washington, however, grabbed and threw the shoe, which was later found to have a cell phone and two sharpened screws hidden inside the sole.  A struggle then ensued as Correctional Officer Matthew attempted to handcuff Washington, who resisted by punching Matthew.  Amid the struggle, Washington grabbed Sergeant Erwin and attempted to throw her to the floor, and Erwin attempted to defend herself, kicking and swinging at Washington to get him off of her.  Upon hearing the commotion, Correctional Officers Dixon, Miller, and Teel came to the assistance of the other officers.  Miller sprayed pepper spray in Washington's face in an effort to gain control over him, but the spray did not subdue him; rather, Washington continued to fight the officers, who hit or punched him until he could be restrained.  Following the incident, Washington was taken to the medical department for treatment of facial injuries.  Three of the Defendants—Sergeant Erwin and Correctional Officers Matthew and Dixon—also sought medical treatment for injuries they sustained during the altercation.

Although Defendants served Washington with a copy of their summary judgment papers, Washington did not respond to the motion by the March 4, 2016, deadline in the Court's scheduling order.  On April 6, 2016, still having received no response from Washington, the Court issued an order directing Washington to file a response to the motion by April 20, 2016, and continuing the pretrial conference and trial dates pending consideration of Washington's submission.  By letter dated April 9, 2016, Washington requested a further extension of the response date due to his lack of representation and need for information from counsel.  On June

15, 2016, the Court granted Washington an extension until July 5, 2016,[2] but that order was subsequently returned to the Court with a notation indicating it could not be delivered because Washington had been discharged from custody. Lacking any alternative address for Washington, who had not notified the Court of his release from custody,[3] the Court contacted the PICC and Washington's probation officer and obtained a forwarding address for him. On June 29, 2016, the Court issued a further order directing the Clerk of Court to mail the June 15, 2016, order to Washington at his address of record and extending the due date for his summary judgment response to July 15, 2016. The June 29, 2016, order advised Washington that failure to submit a response or to seek an extension of the response date within the time permitted could result in dismissal of this action for failure to prosecute. The Court has received no indication the June 29, 2016, order was not delivered to the address provided for Washington. Nevertheless, Washington has neither responded to Defendants' summary judgment motion nor had any other communication with the Court to date.

**DISCUSSION**

The federal district courts have inherent power to dismiss a case sua sponte for failure to prosecute. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962) (holding Federal Rule of Civil Procedure 41(b), which authorizes a defendant to move to dismiss an action for failure to prosecute, did not "abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the

---

[2] The July 5, 2016, order also advised Washington that any request for information from his former counsel should be addressed to counsel and provided him with copies of counsel's withdrawal notices containing their contact information.

[3] Under Local Rule of Civil Procedure 5.1(b), Washington was required to "notify the Clerk within fourteen (14) days of any change of address."

parties seeking relief"). Before dismissing a case as a sanction for a party's litigation conduct, a court typically must consider and balance the factors identified by the Third Circuit in *Poulis v. State Farm Fire & Casualty Co.*:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted).[4] On balance, these factors weigh in favor of dismissal in this case.

Three of the six *Poulis* factors weigh strongly in favor of dismissal. First, as a pro se litigant, Washington bears personal responsibility for failing to comply with the Court's orders directing him to respond to Defendants' summary judgment motion. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). Before withdrawing, Washington's counsel made clear to him that he would be required to comply with all court orders as a pro se litigant. Moreover, this Court's June 29, 2016, order stressed that failure to respond could result in dismissal of this case for failure to prosecute. The first *Poulis* factor thus weighs in favor of dismissal.

---

[4] The Third Circuit has instructed that consideration of the *Poulis* factors is not required "[w]hen a litigant's conduct makes adjudication of the case impossible," *Jones v. N.J. Bar Ass'n*, 242 F. App'x 793, 794 (3d Cir. 2007), such as when a plaintiff refuses to participate in the litigation without explanation, *see, e.g.*, *Shipman v. Delaware*, 381 F. App'x 162, 164 (3d Cir. 2010) (affirming a district court's dismissal of an action for failure to prosecute without considering the *Poulis* factors where the plaintiff failed to respond to discovery requests or to appear for depositions and offered no explanation for his inaction in response to a show cause order from the court); *Spain v. Gallegos*, 26 F.3d 439, 455 (3d Cir. 1994) (holding consideration of the *Poulis* factors was unnecessary where, after receiving an adverse ruling on some of her claims, the plaintiff "willfully refused to prosecute her remaining claims"). This case arguably falls into this category, as Washington's failure to communicate with the Court since April 2016, despite the issuance of orders directing him to respond, suggests he may have abandoned his claims. Nevertheless, the Court will conduct a *Poulis* analysis.

Second, in light of Washington's in forma pauperis status, alternative sanctions short of dismissal—such as fines, costs, or attorneys' fees—are unavailable. *See id.* at 191 (upholding a finding that monetary sanctions were not an alternative to dismissal where the plaintiff was proceeding in forma pauperis).

Third, and most significantly, Defendants have made a strong showing in their summary judgment papers that Washington's claims lack merit. While all of the Defendants admit to using some force against Washington, by Defendants' account, such force was used only after Washington attempted to thwart their inspection of his shower shoe, resisted Correctional Officer Matthew's efforts to handcuff him, and actively fought with the officers. Defendants have also presented evidence that their use of force was defensive and/or for the purpose of gaining control over Washington, corroborated in part by Washington's guilty plea to assault charges as to two of the officers and reckless endangerment charges as to Sergeant Erwin. Washington has presented no evidence refuting Defendants' version of events or suggesting that the degree of force used by Defendants was objectively unreasonable. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding to prevail on an excessive force claim, a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable," a determination that must be made "from the perspective of a reasonable officer on the scene," taking into account "the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained" (alterations in original) (citations and internal quotation marks omitted)).[5] Given the strength of Defendants' summary judgment record, the meritoriousness-of-the-claim factor weighs strongly in favor of dismissal.[6]

---

[5] Although Washington invokes both the Eighth and Fourteenth Amendments in his Amended Complaint, he was, according to Defendants, a pretrial detainee at the time of the events in

The remaining *Poulis* factors carry less weight in this case. Although delay can be prejudicial, *see Emerson*, 296 F.3d at 191, the Court has no information suggesting the delay

---

question, and his claims are therefore analyzed under the Due Process Clause of the Fourteenth Amendment.

[6] Indeed, upon review of the unrebutted evidence presented by Defendants regarding the force used against Washington and the circumstances giving rise to its use, the Court alternatively concludes Defendants are entitled to summary judgment. Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014). The nonmoving party, however, "must overcome his own hurdle in order to withstand the motion for summary judgment." *Id.* In opposing a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 268-69 (quoting *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)).

In evaluating whether force used by correctional officers against a pretrial detainee was objectively reasonable, the following considerations are relevant: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473. The evidence in the summary judgment record suggests the force the Defendants used in this case was proportional to the need for such force. As noted, the need for force was occasioned by Washington's own belligerence during the search of his cell and person and use of force against the officers while attempting to prevent them from seizing his contraband and while resisting their efforts to handcuff him. The officers' force consisted of two bursts of pepper spray, which Correctional Officer Miller deployed after observing Washington tussling with Sergeant Erwin and Correctional Officers Matthew and Thomas, and punches, hits, or grabs by the remaining officers when Washington continued to fight even after being sprayed with pepper spray. There is no evidence the officers used any force against Washington after they gained control over him, nor is there any evidence regarding the extent of his injuries as a result of the altercation, apart from a notation in Sergeant Erwin's use of force report that, after the incident, Washington "was escorted to medical for decontamination and treatment for facial injur[ies]." Erwin Decl. Ex. 1. Notably, three of the Defendants—Sergeant Erwin and Correctional Officers Matthew and Dixon—were also injured in the altercation. Finally, the evidence in the record reflects that Washington actively resisted the correctional officers throughout the altercation, creating a security problem and giving officers reason to perceive him as a threat. On this record, and absent any evidence from Washington to rebut Defendants' showing, no reasonable jury could find the force used to subdue Washington was objectively unreasonable. Summary judgment is therefore warranted in favor of Defendants.

occasioned by Washington's failure to respond to Defendants' summary judgment motion is a source of substantial prejudice to Defendants. And while Washington has been dilatory in complying with the Court's most recent orders, he does not have a significant history of dilatoriness, having been represented by counsel for much of the duration of this case. Finally, given Washington's failure to communicate with the Court following his release from custody, the Court cannot be certain whether his failure to comply with the Court's orders directing him to respond to Defendants' summary judgment motion is the product of willfulness or is due to some other reason. Nevertheless, it bears mention that at the time of his release, Washington was aware both that the summary judgment motion was pending and that he was required to respond to it, and he had an extension motion pending. Despite this knowledge, in the months since he was released, Washington has had no communication with the Court about this case, even after the Court sent two orders directing him to respond or seek a further extension to the address provided by his probation officer and alerted him that failure to respond could result in dismissal of this action. In these circumstances, Washington's unresponsiveness is at least suggestive of an intention not to pursue this case.

In sum, three of the *Poulis* factors—personal responsibility, unavailability of alternative sanctions, and meritoriousness of claims—weigh strongly in favor of dismissal; a fourth factor—willfulness—weighs somewhat in favor of dismissal; and the remaining two factors—prejudice and a history of dilatoriness—are largely neutral. Mindful that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint," *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992), and given the strength of Defendants' unrebutted summary judgment showing, the Court finds the factors weigh in favor of dismissal in this case. Accordingly, this action will be

dismissed with prejudice for failure to prosecute. In the alternative, Defendants' motion for summary judgment will be granted.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, J.